IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jesus Silva,                                              Case No. 3:08CV2589

        Plaintiff

v.                                                       ORDER

Robert O. Hollis, et. al.,

        Defendant

This lawsuit arises out of plaintiff Jesus Silva's arrest, interrogation, and release by the chief of police and officers of the Upper Sandusky Police Department [USPD]. Silva filed this suit against the USPD, the City of Upper Sandusky, and Robert O. Hollis, the chief of police.

Plaintiff alleges claims under 42 U.S.C. § 1983 for violation of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution. In this motion, defendants Upper Sandusky and USPD argue they are not liable for Chief Hollis's actions.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343.

Pending is defendants' motion to dismiss for failure to state a claim upon which relief can be granted under FED. R. CIV. P. RULE 12(b)(6) [Doc. 3]. For the following reasons, defendants' motion to dismiss shall be denied.

**Background**

On October 15, 2007,[1] USPD officers discovered plaintiff Jesus Silva sleeping in a car at Upper Sandusky High School as he waited for a ride to Marion, Ohio. After asking Silva a few questions, USPD Chief Hollis accused Silva of being a gang member. Chief Hollis proceeded to place plaintiff in an arm-bar wrist restraint, pushed Silva's face into the hood of the police car, and examined Silva's tattoos. To facilitate further examination of his tattoos, Chief Hollis required Silva to remove his jacket and shirt. Chief Hollis then ordered another USPD officer to pat down Silva and place him in hand irons. Before transport to the police station, Silva inquired about the grounds of his detention. Chief Hollis responded, "disorderly conduct or something." [Doc. 1-2].

At the police station, Chief Hollis harshly interrogated Silva but ultimately concluded that he could not file charges. Silva requested that he be allowed to secure his own transportation from the police station. Chief Hollis ignored this request; instead, he ordered an officer to drop Silva at the county line, requiring Silva to walk the remaining distance to Marion, Ohio.

On October 14, 2008, Silva filed this lawsuit.

**Standard of Review**

Under Rule 12(b)(6), a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). Plaintiff must offer "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). Although the factual allegations in a complaint

---

[1] Silva's complaint inaccurately states the date of the incident. He alleges that this incident occurred on October 15, 2008, but filed the complaint on October 14, 2008. Defendants' brief points out this error and notes the correct date as October 15, 2007.

need not be detailed, they must sufficiently "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Assoc. of Cleveland Fire Fighters v. City of Cleveland*, *Ohio*, 502 F.3d 545, 548 (6th Cir. 2007); *see also Twombly, supra*, 127 S.Ct. at 1964-65.

In making this determination, I deem all factual allegations in the complaint to be true, *Tellabs*, *Inc. v. Makor Issues & Rights*, *Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007), and "draw all reasonable inferences in favor of the plaintiff." *Directv*, *Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir.2007). It is not my function, at this stage, to weigh evidence or evaluate credibility. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995).

## Discussion

### Municipal Liability

In a § 1983 action, a municipality and its departments are not liable for its employees' actions under the theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipality and its departments, instead, are liable if its employees' actions represent municipal policy or custom. *Id*. at 694.

To prove the presence of municipal policy or custom, plaintiff must identify one of the following: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citations omitted).

With regard to the second theory of liability, an employee's action represents municipal policy or custom "if the decision to take an action is properly made by the government's authorized

3

decision-maker." *Wooten v. Logan*, 92 Fed. App'x 143, 146 (6th Cir. 2004) (unpublished disposition) (citing *Pembauer v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). If the employee is a final decision-maker, even a single act can qualify as a municipality's official policy or custom. *Id*.

When determining whether a local government employee qualifies as a final decision-maker, courts turn to state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). In Ohio, the law states:

> The chief of police shall have exclusive control of the stationing and transfer of all patrolmen, auxiliary police officers, and other officers and employees in the police department, and police auxiliary unit, under such general rules and regulations as the director of public safety prescribes.

O.R.C. § 737.06.

Courts in Ohio have interpreted this statute to grant final decision-making authority to police chiefs. *See Culberson v. Doan*, 125 F.Supp.2d 252, 275 (S.D. Ohio 2000) (finding final decision-making authority for the chief of police in criminal investigation matters); *Hubbard v. City of Middletown*, 782 F.Supp. 1573, 1578-79 (S.D. Ohio 1990) (finding final decision-making authority for the chief of police in formulating sexual harassment policy).

In its determination, courts also examine local ordinances, regulations, charters, practices, and customs. *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (using Cleveland's City Charter and Code to determine authority of police chief); *Hubbard*, *supra*, 782 F.Supp. at 1578 (relying on the Middletown Police Department Manual to determine whether police chief was a final decision-maker).

Courts, notably, distinguish between actions which a police chief performs within his authority as chief and actions which he performs outside of this capacity. *See*, *e.g.*, *Butler v. City of*

4

*Englewood*, 2008 WL 4006786, * 11 (E.D. Tenn. 2008) (holding that the chief's involvement in an arrest was not action taken as a final decision-maker).

For a municipality to be liable for the actions of its police chief, the chief must be acting within his capacity as a final decision-maker; a municipality is not liable for the actions of its police chief when the chief acts as an ordinary police officer. *See Wooten*, *supra*, 92 Fed.App'x at 146-47 (concluding that when the sheriff raped plaintiff after pulling her over, he did not act within his authority as a final decision-maker because he "abused his power in a way that any lower level law enforcement officer could abuse his power") (citing *Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996)).

In this case, Silva argues that the city of Upper Sandusky and the USPD are liable because Chief Hollis exercised his authority as a final decision-maker throughout Silva's arrest, interrogation, and release. Defendants do not dispute that Chief Hollis is a final decision-maker for USPD policy but argue that Chief Hollis did not actually exercise his final decision-making authority in this situation. To a certain extent, I disagree.

Chief Hollis ordered the search, seizure, and transport of Silva based on the vague charge of "disorderly conduct or something." [Doc. 1-2]. By directing other officers to act, Chief Hollis may be found to have acted in his final decision-making authority. *See Rossi v. Town of Pelham*, 35 F.Supp.2d 58, 74 (D.N.H. 1997) (finding the municipality liable for the police chief's ordering of another officer to engage in unconstitutional conduct because when "the policymaker specifically directs or orders the conduct resulting in deprivation of constitutional rights, there is a straightforward causal connection between the municipal policy and the constitutional violation").

In addition to ordering other officers, Chief Hollis was also directly involved in Silva's arrest, interrogation, and release. Chief Hollis may have simply acted within the scope of his

authority as police chief when he engaged in this conduct. *See Brunner v. McKillip*, 488 F.Supp.2d 775, 780 (W.D.Wis. 2007) ("[T]he chief of police, defendant McKillip had final decisionmaking authority with respect to all village law enforcement decisions."); *Saenz v. Lucas*, 2008 WL 2735867, * 6 (S.D.N.Y.) ("By alleging that the Chief of Police has final decision making authority with respect to investigations, plaintiff has carried her burden on this motion.").

At this point, and based solely on my reading of the allegations in the complaint, I find that Silva's complaint adequately avers facts to support his assertion that Chief Hollis exercised final decision-making authority during the USPD's encounter with Silva. Defendants' motion, therefore, shall be denied.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT

Defendants' motion to dismiss for failure to state a claim upon which relief can be granted is denied.

So ordered.

s/James G. Carr<br>
James G. Carr<br>
Chief Judge